The next case on our docket is Alhofen v. Monteilh. Counsel may begin whenever you're ready. Mr. Toomey? That's a big file. Yes, Judge. It is a very big file. Good morning, Judge. Good morning to members of the panel. My name is Mr. Toomey. I represent the plaintiff accountant, Michael Alhofen, in this case. Mr. Alhofen was arrested and maliciously prosecuted. The jury found that there was no culpable cause to arrest Mr. Alhofen. It did so after being instructed by the court that the statement of the victim could not by itself create a culpable cause. In fact, there were two instructions. One based on the Aspen case, which is itself based on California law, and one based on Hawaii law. The instructions were worded differently, but essentially that was the law that the jury was instructed to. And based on those instructions, they came back with a verdict in favor of Mr. Alhofen. Some six months later, the judge of the trial court turned that verdict on its head. All right. Let's limit ourselves to exactly what does the verdict say? The verdict judge found that there was no culpable cause to arrest Mr. Alhofen, that he had established both his federal and state claims for false arrest and malicious prosecution. So there's a constitutional violation, right? Right. Did the court instruct or did the jury make any finding on immunity? No, the court did not. The court properly held that beyond the jury's prerogative with regards to immunity, the question is in what manner of law? All right. If we, for purposes of argument, assume the constitutional violation that you argue, would you address the immunity part of it? Certainly. Okay. And in fact, I think we did. There's a two-part test. One, is it a violation? And two, if there is a violation, is it a violation of a fully established law so as to put a reasonable official on notice that the action they took which created the violation was wrong? Clearly, in this case, that has been met. That's the part of your case that causes me some concern as well. It's clearly a violation of the Fourth Amendment to arrest someone without probable cause. The more difficult question, though, is if there was not probable cause, would a reasonable officer in the position of this arresting officer have known that probable cause was lacking? Because if reasonable officers would have thought they had probable cause, there's immunity. So what about the situation should have led this officer to know that probable cause was lacking? Well, first, we note that under Hawaii law, which was decided 23 years before this case, that an officer simply can't take the word of the victim. Well, that's what he did. He took the word from the victim through three sources. Officer Von Crease, who took the initial report, never made a decision of credibility, and he did not say so. There was no investigation with regard to any of the claims that were made by the officer. He didn't just talk with the victim. He also talked with the supervisor. But the supervisor wasn't there, Judge. He was relying solely on what the victim told him. Right, but the supervisor also knew the accused. No, he knew the accused barely. He hired him about two days before. And we might also point out that that testimony was made to the jury, and the jury rejected it. No, the jury did not submit. He did not submit this question to the jury. The question of whether Mr. Elmendorf or whether or not the officer educated him would include the testimony of Mr. Shannon, who testified at trial that he had spoken with Mr. Alhoffen and that he had spoken with the defendant, Montiel. And the jury, on its findings, did not accept Mr. Shannon's statement that Mr. Alhoffen was agitated or had used racial slurs in reference to Mr. Ramaphosada. Even if you look at the testimony of Mr. Shannon, you will see that Mr. Shannon never said that Mr. Alhoffen admitted or even came close to threatening Mr. Ramaphosada. The jury found that they believed Mr. Shannon would have found out perfectly that that would have been probable cause, but they didn't. And the reasonable inference from that is that they rejected Mr. Shannon's testimony. What did Officer Montiel have to do here, as a minimum, in order not to be in violation of the Fourth Amendment? He shouldn't have made the arrest in the first place. He should have turned it over to the detectives. But it doesn't violate the Fourth Amendment to fail to turn a case over to detectives. What should he have done here? Did he have an obligation to speak to Mr. Alhoffen? He certainly did. Okay, now, is failing to speak to the accused a per se violation of the Fourth Amendment in Hawaii law? In Hawaii law, it does not violate, as far as I know. There is no case on point. But I thought I understood you to say just a minute ago that the officer, Officer Montiel, had an obligation. He does have an obligation under the Fourth Amendment. And this court and other circuits have held, as pointed out in our opening brief and our reply brief, and it was the case, Bruder's case, in which the court found that failure to talk to the defendant and a co-worker of the defendant was a violation of the Fourth Amendment due process. But there is a duty to investigate. And that the officer here failed to investigate. Officer Montiel talked to Mr. Alhoffen. Well, the officer certainly investigated. I understand your contention, the frustration of your client, that the officer could have done a good deal more here. No, Judge, the officer didn't investigate. The officer took two steps here. In 1910, I called him in for an investigation. He called in. I found out there was another report. He did not ask what the source of the evidence was. He did ask what the source of the evidence was, and it was solely the statement of the victim. Then he talked to Mr. Shannon again. Source? Solely that of the victim. Then he refused to talk to Mr. Alhoffen. Had he done so, he could have deprived him of the remainder that this was. There was not enough to make the arrest. But the fact is that he didn't. Had he done so, he may not have been arrested. See, there is a Hawaii case requiring the officer to take the victim's statement. Excuse me, take the accused's statement. But for Rudy's case, the duty to investigate would here require something more than just taking the statement which is originally traced to one person, the victim. There is nothing that the officer did, which does not lead to the victim. In other words, the officer based his decision to arrest solely on the statement of the victim. That does not create a probable cause, and that is clearly the officer's fault. I think we understand your position. Let's hear from opposing counsel. I do request some rebuttal. Absolutely, you have all the rest of your time will remain for you. Good morning, Judge Graver, Judge Bybee, and Judge Beezer. May it please the court, my name is Marie Manuel-Gavigan, and I represent the defendant in this action, Gene Monte. The issue before the court, and I think the court recognizes it, is whether the granting of the post-trial motion for judgment as a matter of law was correct. And it's obviously Officer Monte's position that it was correct. And the issue centers around qualified immunity. Well, we know for sure from the jury's verdict that there was no probable cause to arrest. That's a given in this case. That is correct, Your Honor. And so, and we also know that some reasonable investigation is required for an arresting officer to be able to say that he or she had probable cause to arrest. We reasonably believe that there was probable cause. That is correct, Your Honor. What does the record tell us about whether your client was aware that all of the sources that he talked to derived solely from the same ultimate source, that is, the victim or alleged victim, and what difference does that make to the analysis? I believe, Your Honor, that the record shows that all of the information that Officer Monte had ultimately arose from the victim. But he had other information that he was relying on. In this case, we have to remember that Officer Monte was out on the beat patrolling. He got a call, go to the Star Protection Agency because you're backup, there could be a situation. So already he's on alert, there could be a situation. He goes there and he's met by the person he believes is the manager. He testified that he thought Mr. Shannon was the manager. And Mr. Shannon said, I've got this guy in my office, and he showed him the reports that he had written. He also told him that a fellow officer had been there, this occurred on a Monday morning, that a fellow officer had been there a Friday night before and had taken a complete report. So Officer Monte then calls dispatch to find out if there's anything available on the plaintiff here, Mr. Alhoffen, and he finds out that there is a report of terroristic threatening relating to Mr. Alhoffen. Now, this is his first contact with any of this. He doesn't know anything that happened before. So now he finds out that there's this outstanding report about Alhoffen. And he speaks with Mr. Shannon. Mr. Shannon clearly knows the victim in this case because he's worked with him for several years. Mr. Shannon told him that the testimony was that Mr. Afamasaga was clearly shaken by the incident that had occurred with Mr. Alhoffen. And Mr. Shannon has worked with Mr. Afamasaga, the victim, for several years. He trusts him. The victim is a manager in the security agency, which is obviously a very important position. It's not a position he's just going to give to anybody. The victim was more than just a security guard. So he's a level above the management. And Mr. Shannon was a former police officer as well. So there are people with background in law enforcement that have given this information to Officer Monte. And Officer Monte, taking all the information, one further piece of information that Officer Monte knew, was that Mr. Shannon was firing Mr. Alhoffen that morning as a security guard. He didn't want him there. So obviously Mr. Shannon felt that Mr. Alhoffen was a problem. And this is why they called Officer Monte for backup, because Shannon had had a report of an incident. He's calling Alhoffen in to fire him. He doesn't want any further incidents. Clearly, Mr. Shannon was taking it as a serious matter. So these are the factors that Officer Monte is faced with that morning when he gets this call off the street to come as backup. So already he's on a heightened alert because he knows something may happen. And then when he gets the statement from the victim, there are several statements from the victim, and he knows that the manager of this company is there to fire the accused, and that the manager of the company is there for backup because he's afraid of something happening. This is what Officer Monte is faced with. So I think that looking at all that, he didn't speak with the accused, but he testified, and Officer Monte testified, I was trained not to do that. I'm not the judge. We have to assume, and I think it's probably a good assumption, that Alhoffen would have said, I didn't threaten him, because that's clearly how he testified at trial. I didn't threaten him. He admitted there were heated words, that there was an argument. But if Alhoffen had stated to Officer Monte, I didn't threaten him, now what? So that wasn't how Officer Monte was trained. He testified, I wasn't trained to be the judge between these people. And I think that it makes it reasonable that he would follow his training as an officer and do at that time what he thought was the proper thing to do, which was to make the arrest. Clearly the jury felt there was no probable cause. That doesn't mean that Officer Monte was not reasonable in believing that there was probable cause, because Officer Monte has testified he did believe that he should arrest Mr. Alhoffen. He thought there was probable cause. So was that reasonable? We submit that based on everything that happened that morning, on the circumstances today, that yes, that was reasonable action for Officer Monte to take. And that's what the crux of the qualified immunity is. The jury found that there was no probable cause. Okay, that is a violation. But was that violation so clear to Officer Monte, given the facts and the circumstances that he was given that morning? He had to make a decision. He had to do something. With the facts and the circumstances he was faced with, did he act reasonably? And we submit, yes, he did. He did. So that qualified immunity, then, is the proper, it's proper in this case for Officer Monte. Thank you, counsel. Any further questions? Thank you. I don't believe so. Thank you. Mr. Toomey, you have rebuttal time remaining. Thank you. Judge, the crux of the argument here made by the sentencing counsel is very simple. I was trained to be unreasonable. I was trained to be unreasonable. Well, if that's the case, then every police officer, every government official, like from here, can be trained to be unreasonable. They can be trained to be told, you may arrest a citizen, and you may bash his head in without any probable cause. In that case, though, there's a remedy for that. You may sue the city if they've trained people systematically. We might have sued the city. But the point is that it does not excuse the officer. The officer is a thinking individual. He's got a brain. He's supposed to know the law. The law is presumed to be known. The fact of the matter is that the officer didn't look at statements, as pointed out. He looked at a statement, the same statement, over and over again, not written three different times, but copied, written once and then copied. And that's it. What weight was he allowed to give to the observations of Shannon, who knew both of the individuals and who had some concern? What weight was he allowed to give to the demeanor of these individuals? Okay. First, Mr. Shannon testified that Mr. Halpern was in his office and agitated. The officer went in there to find Mr. Halpern in a state of agitation. He was calm, sitting there. He was completely cooperative. Never said a thing which would indicate that he was in danger or that he was agitated. That clearly contradicted Mr. Shannon's statement. Except that they're talking about two different time periods. No, they're not. They're, in fact, talking when Mr. Shannon came. Out of his office, he told the officer, within at most half a minute, the officer goes in there. The person who was as agitated as Mr. Shannon claimed that Mr. Halpern was would not have been able to calm down in 30 seconds or even five minutes. In fact, if you believe Mr. Shannon, Mr. Halpern was continually building himself up into a rage. In fact, he was completely turned on its head by Officer Montiel's testimony that when he saw Mr. Halpern, first of all, Mr. Al Halpern, he was sitting down quietly in the chair and that when Officer Montiel explained to him why he was there and that he was going to arrest him, Mr. Al Halpern cooperated completely. Didn't say a word, didn't get agitated, was not in a state where any reasonable person, including the officer, feared for his life. Quite the opposite. This contradicts Shannon's state. This should have told the officer, wait a minute, this guy's afraid because he's going to fire him, he's going to get sued. So he wants very much to have me haul him off to jail, hoping to intimidate this guy. And that's what happened. Montiel didn't use any sense. Montiel knew what the law was, but was presumed to have known what the law was. By the way, it's not what Montiel knew. It's what a reasonable officer would have done under the similar situation. And a reasonable officer would have looked at the statements, oh, I got some statements here. Hey, they are the same thing. They're just sitting on three different pieces of paper. My fellow officer did not make a report. He did make a report. He didn't find this to be honest. He didn't find it likes or anything. No. Didn't do anything. Mr. Shannon, in his actions, couldn't do anything to supply the police with Al Holton's address. He claimed all he was like, oh, fuck, poor man. So he resisted that. In short, Mr. Shannon knew, Mr. Von Keefe knew, and should have known, a reasonable police officer would have known, that they had no probable cause to arrest him. Very simple. Your statements come from the same source. Your evidence? What evidence there is. If you choose to believe him. With your own eyes. With that, that, that, that, that long as that's supposed to be agitated, angry, he's supposed to be going bananas. That's why I'm here. He's going to burst. Well, when he goes in, does a burst occur? No. Does anything occur? No. Man sitting probably in a chair. Man simply sitting in a chair. Not angry. Officer comes in. I'm officer here, I'm going to arrest you. Does the man fly off the handle? No. What does that tell you about, or should have told you, about Shannon? Well, Shannon is an alarmist. You really have to take what he says with a grain of salt. A reasonable police officer would. A reasonable police officer said, they're going to write you up a letter, no trespassing, you're fired. If you come back here again, you're going to be arrested for criminal trespass. And then he files this with the detectives. And they investigate. And had they investigated, they would have made the same finding that the jury filed. That this thing was a fraud. Made up for some reason by amortization. And that is what happened. Now, I'd like to make one certain point. While the jury decides what happens factually, and that decision on the facts and every reasonable inference governs both the factual decision and the legal aspect, or namely whether or not qualified immunity exists. Neither this court, nor the trial court, has the right to make its own separate facts and conclusions. It must give Mr. Holohofn every reasonable inference that can be drawn from the jury's verdict. It must do this because it is a constitutional requirement. It violates the 7th Amendment not to do so. And once you do that, the reasonable inference is, the officer did not reasonably investigate. Reasonable inference is that had he investigated, he would have found the truth. And reasonable inference is that the officer acted unreasonably. And if he acted unreasonably, he's not entitled to qualified immunity. In short, qualified immunity protects public officials, not incompetent public officials, which the officer is, but only competent officials. And if you apply the law to this case, and you forget that one is accused, one is supposedly a law enforcement officer, you'll find that the law enforcement officer here acted unreasonably, and is incompetent, and is not entitled to qualified immunity under grace. And I thank the court for its indulgence. Thank you, counsel. We appreciate very much the arguments of both parties. The case just argued is submitted. And that will bring us to the case on this morning's docket, which is Chen v. Ashcroft. And, again, counsel may begin whenever they're ready.
judges: Breezer Graber, Bybee